**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ESSITY PROFESSIONAL HYGIENE NORTH AMERICA LLC, a Delaware limited liability company, <br><br>     Plaintiff, <br> v. <br><br> EEASY BUY LLC, a Michigan limited liability company, FAHMIDA TONNI, a natural person, and JOHN DOES 1-10, <br><br>     Defendants. | Case No. _____ <br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 USC § 1125(a); AND RELATED CLAIMS** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Essity Professional Hygiene North America LLC ("Essity" or "Plaintiff"), brings this action against defendants Eeasy Buy LLC ("Eeasy Buy"), Fahmida Tonni ("Tonni"), and John Does 1-10 (collectively, "Defendants") for: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (2) false advertising in violation of Michigan Consumer Protect Act, Mich. Comp. Laws §§ 445.901, *et seq.* These claims arise from Defendants' misappropriation of Plaintiff's trademarks in connection with Defendants' unlawful use of Plaintiff's licensed trademarks to offer for sale on the Internet Essity-trademarked products but deliver generic/non-Essity products. Essity Trademarks and of the Essity Trademarks (hereinafter defined) in North America, has a cognizable commercial interest in the Essity Trademarks, and is injured commercially by the deceptive and/or misleading

use of the Essity Trademarks.  In support of their Complaint, Plaintiff alleges as follows:

**PARTIES**

1.      Essity is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in Philadelphia, Pennsylvania.

2.      Eeasy Buy is a limited liability company, organized under the laws of the State of Michigan.  Upon information and belief, Eeasy Buy's principal place of business is Hamtramck, Michigan.  Eeasy Buy operates or assists in the operation of the online storefront on www.amazon.com ("Amazon") that is currently called "Suparnova" and has the Merchant ID A1886R70GW83IA (the "Amazon Storefront").[1]  Eeasy Buy has used and continues to use Plaintiff's trademarks to sell products through the Amazon Storefront that are not manufactured, sold by, or otherwise related to Plaintiff's businesses.  Eeasy Buy does business throughout the United States through the Amazon Storefront, including in Michigan.

3.      Tonni is a natural person who, upon information and belief, resides at 3862 Belmont St., Hamtramck, Michigan 48212 (the "Belmont Street Address").  Tonni operates or assists in the operation of the Amazon Storefront, falsely uses

---

[1] Amazon allows storefront operators to change the names of their storefronts, but every storefront on Amazon is assigned a "Merchant ID" that does not change over time even if the formal "name" of a storefront is changed.  The Merchant ID for Defendants' Amazon Storefront is A1886R70GW83IA.  Even if Defendants change the name of their Amazon Storefront at some time in the future, their storefront can always be accessed at the following link that includes the storefront's Merchant ID: https://www.amazon.com/sp?seller=A1886R70GW83IA.

Plaintiff's trademarks in advertising products for sale on the Amazon Storefront, and sells infringing products bearing Plaintiff's trademarks on the Amazon Storefront. Tonni also does business throughout the United States through the Amazon Storefront, including in Michigan.  The articles of organization that were filed for Eeasy Buy lists Tonni as the registered agent and the Belmont Street Address as the registered office mailing address.  Tonni is listed as the sole organizer of the articles of organization.  Corporate documents filed for Eeasy Buy do not list any other individuals as members, officers, or agents of Eeasy Buy.  Upon information and belief, Tonni is the sole member, officer, and agent of Eeasy Buy.

4.     Plaintiff asserts claims against Tonni in both her individual capacity as well as her capacity as the sole member and officer of Eeasy Buy.  Upon information and belief, Tonni, in her individual capacity, and Eeasy Buy assist in and are responsible for the operation of and sales of products through the Amazon Storefront.

5.     Alternatively, as the sole member of Eeasy Buy, Tonni directs, controls, ratifies, participates in, or is the moving force behind the use of Plaintiff's trademarks in false advertisements and acquisition and sale of infringing products bearing Plaintiff's trademarks by Eeasy Buy.  Upon information and belief, Tonni personally participated in the use of Plaintiff's trademarks in false advertisements, product listings, and acquisition and sale of infringing products bearing Plaintiff's

3

trademarks by Eeasy Buy.  Accordingly, Tonni is personally liable for infringing activities carried out by Eeasy Buy without regard to piercing the corporate veil.

6.     Alternatively, on information and belief, Eeasy Buy follows so few corporate formalities and is so dominated by Tonni that it is merely an alter ego of Tonni.  Accordingly, Plaintiff is entitled to pierce the corporate veil of Eeasy Buy and hold Tonni personally liable for the infringing activities of Eeasy Buy.

7.     Plaintiff believes that other individuals or entities may be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome of the dispute.  The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to Plaintiff.  Therefore, Plaintiff sues these defendants by the fictitious names John Does 1 through 10.  When the true names, involvement, and capacities of these parties are ascertained, Plaintiff will seek leave to amend this Complaint accordingly.  If Plaintiff does not identify any such parties, Plaintiff will dismiss these defendants from this action.

## **JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  Plaintiff's federal claims are predicated on 15 U.S.C. § 1125(a) and their claims arising under the laws of the State of Michigan are substantially related to their federal claims such that they form

part of the same case or controversy under Article III of the United States Constitution.

9. This Court has general personal jurisdiction over Eeasy Buy because it is "at home" in Michigan: it is incorporated in Michigan; its registered agent office is at the Belmont Street Address in Michigan; and it holds itself out to the public as located at the Belmont Street Address on its Amazon Storefront page.

10. This Court has general personal jurisdiction over Tonni because she is a citizen of the State of Michigan.

11. In the alternative, this Court has specific personal jurisdiction over Defendants because they have purposefully directed commercial activity into Michigan, including by operating the Amazon Storefront through which they direct false advertisements towards Michigan consumers and sell the infringing products bearing the Plaintiff's trademarks to Michigan consumers, and facilitating the fulfilment of the infringing sales in the State of Michigan. Plaintiff's claims arise out of or relate to these Michigan-directed activities.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district or, in the alternative, because Defendant is subject to personal jurisdiction in this district.

5

## FACTUAL ALLEGATIONS
### Plaintiff and Its Trademarks

13.     Essity is a leader in the hygiene and health industry.  In conjunction with its Swedish parent company, non-party Essity Aktiebolag, and its subsidiary, Essity Hygiene and Health Aktiebolag (collectively, "Essity Global"), Essity oversees and operates a large portfolio of brands in three major product categories: Health & Medical, Consumer Goods, and Professional Hygiene.  Among these brands is Tork®, which has a product range focused on sustainable professional hygiene products including refillable dispensers and product refills for napkins, wipes, hand towels, tissue, toilet paper, soap, and sanitizers.

14.     To promote and protect its brands, Essity Global has registered numerous trademarks with the United States Patent and Trademark Office.  These trademarks include, but are not limited to: Essity® (U.S. Trademark Registration Nos. 5,784,502, 5,796,744, 5,796,745, 5,803,013, 5,841,994, 5,906,062, 5,987,126 6,093,370, 6,104,497, 6,132,918,), essity ® (U.S. Trademark Registration No.  5,877,030,  5,964,376,  5,987,140,  6,093,375,  6,104,500), TORK® (U.S. Trademark Registration Nos. 1,168,341 2,368,984, 4,109,466, 5,887,975), TORK MATIC® (U.S. Trademark Registration No. 2,960,039), TORK EASY HANDLING® (U.S. Trademark Registration No. 5,032,096), ® (U.S.

Trademark Registration No. 4,993,751), and TORK XPRESS® (U.S. Trademark Registration No. 4,554,957), (collectively, the "Essity Trademarks").

15. Essity is the licensee of the Essity Trademarks in North America, has a cognizable commercial interest in the Essity Trademarks, and is injured commercially by the deceptive and/or misleading use of the Essity Trademarks.

16. The registration for each of the Essity Trademarks is valid, subsisting, and in full force and effect.

17. Pursuant to its license agreement with Essity Global, Essity actively uses, markets, and enforces its rights in all of the Essity Trademarks in commerce in North America.

18. Due to the quality and exclusive distribution of Essity products, and because Plaintiff is recognized as the source of high-quality products, the Essity Trademarks have substantial value.

**Online Marketplaces and the Challenge They Present to the Essity Brand**

19. E-commerce retail sales have exploded over the past decade. From 2009 through the fourth quarter of 2025, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 16.6%. *Quarterly Retail E-Commerce Sales Report*, UNITED STATES CENSUS BUREAU (March 10, 2026), https://www.census.gov/retail/ecommerce.html.

20.     In 2024, consumers spent $1.192 trillion on e-commerce sales, a 7.5% increase from 2023.  *See* Abbas Haleem, *US Ecommerce Sales in 2024 More than Double those of 2019*, DIGITAL COMMERCE 360 (Mar. 3, 2025), https://www.digitalcommerce360.com/2025/03/03/us-ecommerce-sales-2024/.  The massive growth in e-commerce is being driven largely by sales on online marketplaces.  For example, in 2024, United States consumers spent more than $500 billion in ecommerce sales on Amazon and Walmart.  *Id.*

21.     While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

22.     Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them.  Instead, consumers must trust that the product they receive from an online order will be of the quality they expect and typically receive from the brand owner.

23.     Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized sellers of the products they sell, do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller, and do not require sellers to actually have the products they sell in their possession or inventory.  As a result, any person who is able to obtain a brand owner's products

8

through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

24.     Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers.

25.     Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic.  A brand owner's inability to exercise control over the quality of its products can present serious risks to the health and safety of consumers.

26.     The structure, construction, and user interface of online marketplaces also pose threats to a brand owner's ability to maintain its goodwill, reputation, and brand integrity.

27.     When purchasing products on an online marketplace, customers are confused about whether a seller of a product is authorized by the brand owner. Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the brand owner or, at minimum, from an authorized seller that is selling under the brand owner's oversight and with the brand owner's approval.  Consumers who purchase on Amazon are

particularly likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing that states "Brand [name of brand]" immediately under the title of the product, even though many products are sold on Amazon by unauthorized sellers that have no relationship with the brand owner.

28.     For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from a seller who is not authorized or otherwise affiliated with the brand and does not (and cannot) follow the brand owner's quality controls.

29.     When a consumer purchases on an online marketplace and receives a product that is damaged, defective, poor quality, or otherwise not as described, the consumer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

30.     Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products: online product reviews.  Any consumer who is dissatisfied with a product received can post a review on the marketplace for all other consumers across the world to see.  These reviews, which often remain permanently attached to products, will often criticize the brand rather than the marketplace seller that sold the product.

31.     Online product reviews significantly impact a brand's reputation.  For instance, research has shown that 42% of online consumers now trust online reviews

10

as much as personal recommendations from friends and family. *Online Reviews Statistics*, CAPITAL ONE SHOPPING RESEARCH (Jan. 27, 2026), https://capitaloneshopping.com/research/online-reviews-statistics/. Among consumers between eighteen and thirty-four years old, this share increases to 91%. *Id*. Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission ("FTC") has begun suing companies who post fake reviews of their products on online marketplaces. Megan Henney, *FTC cracking down on fake Amazon reviews*, FOX BUSINESS, (Feb. 28, 2019), https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-reviews (quoting a press release from the director of the FTC). The FTC has also released guidance to consumers on how to evaluate online reviews for authenticity. *See How to Evaluate Online Reviews*, FEDERAL TRADE COMMISSION CONSUMER ADVICE (Oct. 2022), https://consumer.ftc.gov/articles/how-evaluate-online-reviews (warning consumers that some companies may provide incentives, such a free product, in exchange for writing a review).

32. Consumers are placing greater trust in negative online reviews of products than their positive counterparts. *See Fake Review Statistics*, CAPITAL ONE SHOPPING RESEARCH (last updated Sept. 10, 2025), https://capitaloneshopping.com/research/fake-review-statistics/ (estimating that an average of 30% of online reviews are considered fake or inauthentic and 82% of

consumers will encounter these fake reviews at least once in a twelve-month period); Sofia Garcia Vargas, *From Trust to Doubt: Why Fake Online Reviews Still Fool Consumers*, UNIVERSITY OF SOUTH FLORIDA MUMA COLLEGE OF BUSINESS (June 4, 2024), https://www.usf.edu/business/news/2025/06-04-fake-online-reviews-study.aspx (explaining that participants in a series of studies were "substantially more likely" to trust negative reviews than positive reviews). According to one study, a single negative review on the first page of a product page reduced the likelihood of purchase by the consumer by 42%. Paulo Albuquerque, et al., *How Negative Reviews Affect Online Consumers*, INSEAD KNOWLEDGE (Nov. 9, 2023), https://knowledge.insead.edu/marketing/how-negative-reviews-affect-online-consumers. As a result, brands are especially harmed when consumers leave negative product reviews after purchasing from an unauthorized seller because the reviews will be widely viewed and deemed to be particularly accurate in describing a product's quality.

33. Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a brand owner's reputation and goodwill. Not only are consumers less likely to buy a product with negative reviews, websites like Amazon use algorithms to downgrade products it believes consumers are less likely to buy. Thus, poor reviews can create a downward spiral where downgraded

search placement leads to reduced sales, which leads to further downgraded product placement.

**Plaintiff's Reputation and Goodwill Have Been Harmed by Numerous Online Reviews Written by Customers Who Purchase From Unauthorized Sellers on Online Marketplaces**

34.     Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor-quality products or customer service and leave negative reviews on product listings.  These negative reviews injure consumers' perceptions of a brand's quality and reputation, ultimately causing the brand to suffer damage to its goodwill and lost sales.

35.     Numerous consumers have written negative reviews of Essity products being offered for unauthorized sale on online marketplaces.  In these reviews, many of which appear on listings of products that have been offered for sale by Defendants, consumers have given Essity products low "ratings" and complained of receiving products that were damaged, missing contents, entirely different from the advertised Tork branded product, or of otherwise poor quality.

36.     For example, Defendants have sold on the Amazon product listing for the "Tork Matic Paper Hand Towel Roll White H1 Universal, 100% Recycled Fiber, 6 Rolls x 700 ft, 290089" product seen in the screenshot below.[2]

---

[2] The Amazon listing for this product can be viewed at https://www.amazon.com/Tork-290089-Advanced-Matic-Length/dp/B00A3C842G?th=1.



37.     As seen in the following sample screenshots of customer reviews, numerous consumers have left negative reviews of this product, complaining of receiving products that were not from the Tork brand entirely, were not delivered as advertised, were missing, or of otherwise poor quality.







38.     Defendants have also sold on the Amazon product listing for the "Tork Multifold Hand Towel White H2, Universal, 100% recycled Fibers, 16 x 250 Towels,    MB540A"    product    seen    in    the    screenshot    below.[3]

---

[3] The Amazon listing for this product can be viewed at  https://www.amazon.com/Tork-Universal-MB540A-Multifold-Length/dp/B00M6XTBJK.



39.     As seen in the following sample screenshots of customer reviews, numerous consumers have left negative reviews of this product, complaining of receiving products that were not from the Tork brand entirely, were not delivered as advertised, were missing, or of otherwise poor quality.



16



sims8

★☆☆☆☆ **Not worth it!**

Reviewed in the United States on February 17, 2026

Style: 16 x 250 Hand Towels | **Verified Purchase**

Made cheap! I will not buy again.

Helpful | Report



Rosa E.Guevara

★☆☆☆☆ **It's not of good quality**

Reviewed in the United States on December 2, 2025

Style: 16 x 250 Hand Towels | **Verified Purchase**

It doesn't have the same quality, you've lost a customer, I won't buy it again

Helpful | Report

Translated from Spanish by Amazon

See original · Report translation



ms

★☆☆☆☆ **Don't waste your money cheap imitation white paper towel buy something else**

Reviewed in the United States on November 13, 2025

Style: 16 x 250 Hand Towels | **Verified Purchase**

I have ordered these for 4 years and this case is the cheapest paper towels cheap scratchy harsh like the cheapest you could ever purchase. It takes 3 - 4 to dry your hands They are not the same quality as previous purchases with the same order number. Will never purchase again don't waste your money. They are crap.

3 people found this helpful

Helpful | Report



Hoffman Estates User

★☆☆☆☆ **Too stiff!**

Reviewed in the United States on July 2, 2025

Style: 16 x 250 Hand Towels | **Verified Purchase**

Too stiff, not absorbent, color and size off, do not recommend at all.

Helpful | Report

 Sylvia Newman

★☆☆☆☆ **Paper Hand Towels**

Reviewed in the United States on May 3, 2025

Style: 16 x 250 Hand Towels   |   **Verified Purchase**

not worth the money, not as described on Amazon website. Not strong, tears super easy and arrived damaged, most of the towels were bent and torn.

One person found this helpful

( Helpful )   |   Report

 Mallisa Matos

★☆☆☆☆ **Cheap Quality**

Reviewed in the United States on April 18, 2025

Style: 16 x 250 Hand Towels   |   **Verified Purchase**

Cheap quality. Very thin and requires several sheets to dry hands. Not white as described. More like a cream color. I would never buy again.

( Helpful )   |   Report

 Dimples911

★☆☆☆☆ **Crappy thin useless**

Reviewed in the United States on January 4, 2025

Style: 16 x 250 Hand Towels   |   **Verified Purchase**

I have brought in the past they were much better/ stronger. What I received today is thin crappy piece of see thru paper. Trust me it is not 250 per pack either the packs do not come up to the same point in my dispenser as before! Maybe 150 maybe! I just don't feel like going through the hassle to return! They should be ashamed!

( Helpful )   |   Report



40.    Defendants have also sold on the Amazon product listing for the "Tork Jumbo Toilet Paper Roll White T22, Universal, 2-ply, 12x1000', TJ0922A" product seen in the screenshot below.[4]



41.    As seen in the following sample screenshots of customer reviews, numerous consumers have left negative reviews of this product, complaining of

---

[4] The Amazon listing for this product can be viewed at https://www.amazon.com/Tork-Universal-TJ0922A-Tissue-Length/dp/B009B1BUBW.

receiving products that were not from the Tork brand entirely, were not delivered as advertised, were missing, or of otherwise poor quality.









42.     The foregoing reviews are only a sample of the negative reviews of the products depicted above and of other Essity products listed on the Amazon website that Defendants have sold through their Amazon Storefront.

43.     Amazon does not allow product reviews to identify the seller who sold the product that is the subject of the product review.  Given that Defendants have sold a high volume of products offered for sale on the Amazon listings for Essity

products and have received similar "Seller Feedback" on their Amazon Storefront,[5] it is likely that some of the foregoing negative reviews—and the many similar reviews of Essity products that Defendants have sold on Amazon—were written by customers who believed they were purchasing legitimate Essity products from Defendants, only to receive non-legitimate, generic products.

**Plaintiff's Investigation into the "Suparnova Storefront" and Discovery of Defendants' False Advertising**

44. Due to the risks to consumers and the reputational concerns associated with the illegal use of the Essity Trademarks to falsely advertise non-legitimate, generic products, Essity actively monitors the sale of its products online.

45. Through these efforts, Essity discovered that high volumes of products were being sold on Amazon listings for Essity products through the "Suparnova" storefront.

46. The Amazon Storefront lists its "Business Name" as "Eeasy Buy LLC" with its "Business Address" as the Belmont Street Address.

47. Through investigation, Essity identified the limited liability company organized under the laws of Michigan called "Eeasy Buy LLC" that utilizes the same Belmont Street Address in its corporate documents.

---

[5] Examples of Seller Feedback on Defendants' Amazon Storefront can be found *infra* ¶¶ 53, 55.

48.     As part of its investigation, Essity conducted multiple test purchases of products from the "Suparnova" storefront.

49.     Through test purchases, Essity determined that Defendants use the Essity Trademarks on product listings for Essity-branded products, but instead deliver generic, non-Essity products made by an entirely different company ("Generic Products").

50.     For example, Defendants use the Essity Trademarks and images of Essity-branded products to offer products for sale on a product listing for a "Tork Jumbo Toilet Paper Roll White T22, Universal, 2-ply, 12 x 1000', TJ0922A" product, as shown by the screenshot below.



51.     Essity conducted a test purchase of a product from the listing above. Like many other customers who left reviews of this product (*see* ¶¶ 40-41), instead of receiving an Essity-branded product, Essity received a Generic Product – specifically, a "GEN JRT1000" product that is not an Essity product.

52.     Essity conducted multiple test purchases from other product listings by the "Suparnova" storefront for Essity-branded products and instead received multiple Generic Products.

53.     Essity's test-buy experience is consistent with the many negative reviews customers have made about receiving Generic Products. As shown below, customers have written reviews of Defendants' Amazon Storefront in which they complained that they did not receive the name-brand products they believed they were purchasing.

★☆☆☆☆     "Buyer beware. The listing showed Tork toilet paper. I ordered Tork brand toilet paper and received some generic no name brand."

By steven p on February 21, 2026.

★☆☆☆☆     "I ordered a case of TORK toliet paper. What I recieved was a case of GEN toliet paper. GEN toliet paper is of poor quality. This has happened TWICE. Both orders are in the process of being returned/refunded. Do you have TORKtoliet paper in stock?"

Read less

By BD Wong on February 20, 2026.

★☆☆☆☆     "Paid for more expensive TORK product. Seller sent less expensive GEN product."

By Kath on February 5, 2026.

★☆☆☆☆     "Ordered 80 rolls of Tork brand toilet paper. Received 96 rolls of "GEN" brand toilet paper."

By peter cameron on February 2, 2026.

★☆☆☆☆   "Ordered Tork 3ply paper towels. Received some unknown brand . Poor packaging. Box left out in the rain. Box of paper towels was completely soaked. Unsanitary for use now."

Read less

By Amazon Customer on December 29, 2025.

---

★☆☆☆☆   "Sent an inferior product. We immediately returned. And we cannot get a refund."

By Carl A. Knoll on November 21, 2025.

---

★☆☆☆☆   "Sent generic instead of actual item ordered"

By Amazon Customer on October 9, 2025.

---

★☆☆☆☆   "Sent cheaper version of what I ordered and charged for the name brand. This is not acceptable"

By JJ on April 28, 2025.

---

★☆☆☆☆   "I ordered Tork 100% recycled tissue and I received GEN tissue, not recycled and not eco friendly. I will not order again."

By bozemaniac on March 13, 2025.

54.     Upon information and belief, Defendants do not maintain an inventory of products and instead wait for consumers to place orders before attempting to procure the product to deliver it to the consumer.  This results in products being delayed, or, worse, never shipped to the customer at all, causing further customer dissatisfaction with the brand.

55.     As shown below, customers have also written reviews of Defendants' Amazon Storefront in which they complained of exceptionally poor customer

service from Defendants and of receiving products that were delayed or even never received.

★☆☆☆☆ "Package never arrived. No photo proof of delivery like literally every Amazon purchase ever. Liars. Do not use them."

By Tyler Campbell on March 3, 2026.

★☆☆☆☆ "Order delayed, delayed, delayed, never delivered. I kinda needed the product. Very disappointed. Order from someone else."

By Amazon Customer on February 20, 2026.

★☆☆☆☆ "Never got this product at all."

By MICHAEL McCoy on February 14, 2026.

★☆☆☆☆ "I never received the item."

By Rosa on February 11, 2026.

★☆☆☆☆ "Never received package yet payed additional $30 for priority shipping. Seller refuses to help."

By Kyle on January 5, 2026.

56.     The negative reviews of Defendants' Amazon Storefront, along with the numerous negative consumer reviews on Amazon of Essity products, including products sold by Defendants, *see supra* ¶¶ 36-41, show that Defendants are consistently fulfilling orders placed by consumers for Essity products with Generic Products that are of inferior quality.

26

57.     Because consumers cannot see, touch, or inspect the products they view on Amazon before purchase, it is especially important that the product titles, descriptions, and images of products are accurate and up-to-date.

58.     By using the Essity Trademarks and images of Essity-branded products on the product listings through which Defendants have sold Generic Products, Defendants misrepresented to Amazon consumers that the products consumers were purchasing from Defendants were Essity-branded products.  These sales cause customers to write negative reviews on the listings for Essity products that harm Essity's reputation and hurt the placement of Essity products in search results.

**Plaintiff Has Suffered Substantial Harm As A Result of Defendants' Conduct**

59.     Defendants' use of the Essity Trademarks to falsely advertise the sale of non-Essity products has caused significant harm to Essity and its brands.

60.     When a consumer receives an entirely different product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with Plaintiff.  As such, Defendants' ongoing use of the Essity Trademarks in advertisements and sales of Generic Products harms Plaintiff and its brands.

61.     As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of their intellectual property, harm to the goodwill

associated with the Essity family of brands, and damage to their existing and potential business relations.

62.     Plaintiff is entitled to injunctive relief because Defendants will otherwise continue to unlawfully use the Essity Trademarks to advertise and sell Generic Products of inferior quality to Essity products and interfere with Essity's ability to control the quality of its products and customer service given to buyers. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to Plaintiff's reputation, goodwill, business relationships, intellectual property, and brand integrity.

63.     Defendants' conduct was and is knowing, intentional, willful, malicious, wanton, and contrary to law.

## COUNT I
### False Advertising
### 15 U.S.C. § 1125(a)

64.     Plaintiff re-alleges and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

65.     Essity Global has registered the Essity Trademarks with the United States Patent and Trademark Office.

66.     The Essity Trademarks are valid and subsisting trademarks in full force and effect.

67. Essity is the licensee of the Essity Trademarks in North America, has a cognizable commercial interest in the Essity Trademarks, and is injured commercially by the deceptive and/or misleading use of the Essity Trademarks. Pursuant to its agreement with Essity Global, Essity actively uses, markets, and enforces its rights in all of the Essity Trademarks in commerce in North America.

68. Defendants have willfully and knowingly used, and continue to use, the Essity Trademarks in commerce without Plaintiff's consent for the purpose of selling Generic Products on the Internet.

69. Defendants' advertisements and promotions of Generic Products unlawfully using the Essity Trademarks have been disseminated to the relevant purchasing public.

70. Defendants advertise, promote, and sell products bearing the Essity Trademarks through product listing pages on Amazon that show images of Essity products.

71. This representation is false because Defendants actually sell Generic Products that are not Essity products.

72. Defendants have used, and continue to use, the Essity Trademarks, images of Essity products, and other promotional materials to falsely represent the Generic Products purchased by consumers through the Amazon Storefront as being products of Plaintiff's brands and as being affiliated, associated, connected, or

otherwise related in any way to Essity, Essity's products, or Essity's highly-respected hygiene and health brands.

73. Defendants' use of the Essity Trademarks, images of Essity products, and other promotional materials in connection with Defendants' sale of inferior and off-brand products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are Essity products and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiff.

74. Defendants' use of the Essity Trademarks, images of Essity products, and other promotional materials in connection with Defendants' sale of inferior and off-brand products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products Defendants offer for sale are of the same size, quantity, and quality of Essity products.

75. Defendants' conduct constitutes false advertisement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

76. As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

77. Plaintiff is entitled to recover its damages caused by Defendants' infringement of the Essity Trademarks and disgorge Defendants' profits from their

sales of products unlawfully sold using Essity Trademarks and unjust enrichment.

78.     Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiff will suffer irreparable harm.

79.     Plaintiff is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith used Essity's trademarks to falsely advertise, making this case exceptional.

## COUNT II
### False Advertising In Violation Of Michigan Consumer Protection Act
### Mich. Comp. Laws §§ 445.901, et seq.

80.     Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81.     Essity is the licensee of the Essity Trademarks in North America, has a cognizable commercial interest in the Essity Trademarks, and is injured commercially by the deceptive and/or misleading use of the Essity Trademarks.

82.     Defendants' false advertising of Essity products and use of the Essity Trademarks on product listings for Generic Products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Essity Trademarks and originate from or are sourced from, sponsored by, approved

by, authorized by, or otherwise connected with or certified by Essity when they are not.

83. As shown by the numerous negative reviews of Essity products by Amazon customers, consumers mistakenly believe they are purchasing genuine products legitimately bearing the Essity Trademarks when they purchase products from Defendants. When consumers receive inferior quality Generic Products, they are surprised, confused, disappointed, and angry, including refusing to buy Essity products again, and blame Essity for their negative experience.

84. Unhappy consumers then post these negative reviews on Amazon, which are publicly and permanently available online and cause significant harm to Essity's brand, reputation, business, sales, and customer goodwill.

85. Defendants' false advertising and sale of Generic Products interferes with Essity's business and harms its business, brand, and reputation because, among other things, Essity cannot track and monitor the sale of its products; cannot ensure sellers of its products are selling on high-quality products that originate from Essity; cannot ensure sellers of its products are selling only high-quality, non-damaged products; cannot ensure sellers are providing high-quality customer service; cannot communicate recall information to all sellers and customers; and cannot work with sellers to address customer problems or negative feedback relating to Essity or its products.

86.     The products sold by Defendants are not, in fact, Essity products and are inferior in size, quantity, and overall quality.

87.     Defendants' unauthorized use of the Essity Trademarks to sell Generic Products has caused significant damage to Plaintiff's business relations and infringed on the Essity Trademarks.

88.     Defendants' actions constitute an unfair or deceptive sales practice as described in Michigan Consumer Protection Act, §§ 445.901, *et seq*.

89.     In harming Plaintiff, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiff is entitled to an award of exemplary damages, punitive damage, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, disgorgement of profits, punitive damages, exemplary damages, attorney fees, and pre-judgment and post-judgment interest, as permitted by law;

B.     An accounting of Defendants' profits from their infringing sales of non-Essity products using the Essity Trademarks;

33

C. A permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i) Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the Essity Trademarks;

ii) Prohibiting the Enjoined Parties from using any of the Essity Trademarks in any manner, including advertising on the Internet;

iii) Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Essity products as well as any products bearing any of the Essity Trademarks;

iv) Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Essity Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v) Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' Amazon Storefront any reference to any Essity products or any of the Essity Trademarks;

vi) Requiring the Enjoined Parties to take all action, including but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove from the Internet any of the Essity Trademarks which associate Essity products or the

Essity Trademarks with the Enjoined Parties or the Enjoined Parties' Amazon Storefront;

vii) Requiring the Enjoined Parties to take all action to remove the Essity Trademarks from the Internet, including from the website www.amazon.com;

viii) Requiring the Enjoined Parties to take all action to remove, or cause to be removed, any customer reviews of products bearing the Essity Trademarks that were sold by Defendants on third-party marketplace websites including, but not limited to www.amazon.com; and

ix) Requiring Defendants to destroy or return to Plaintiff all products bearing the Essity Trademarks in Defendants' possession, custody, or control.

D. An order requiring Amazon.com, Inc. to freeze all funds in any accounts owned or controlled by Defendants;

E. An award of attorneys' fees, costs, and expenses; and

F. Such other and further relief as the Court deems just, equitable and proper.

| Dated: April 23, 2026 | s/Edward J. Bardelli |
|---|---|
| | Edward J. Bardelli (P53849) |
| | WARNER NORCROSS + JUDD LLP |
| | 150 Ottawa Ave, NW, Ste. 1500 |
| | Grand Rapids, Michigan 49503 |
| | (616) 752-2165 |
| | ebardelli@wnj.com |
| | |
| | Emma K. Morehart (*pro hac vice forthcoming*) |
| | VORYS, SATER, SEYMOUR AND PEASE |
| | 301 East Fourth Street, Ste. 3500 |
| | Cincinnati, OH 45202 |
| | (513) 723-4036 |
| | ekmorehart@vorys.com |
| | |
| | *Attorneys for Plaintiff* |

35

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury on all issues so triable.

Dated:  April __, 2026                    Respectfully submitted

/s/_____
Edward J. Bardelli (P53849)
WARNER NORCROSS + JUDD LLP
150 Ottawa Ave, NW, Ste. 1500
Grand Rapids, Michigan 49503
(616) 752-2165
ebardelli@wnj.com

Emma K. Morehart (*pro hac vice forthcoming*)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street, Ste. 3500
Cincinnati, OH 45202
(513) 723-4036
ekmorehart@vorys.com
***Attorney for Plaintiff Essity Professional Hygiene North America LLC***